**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____
                                  :

JUDITH A. MORIARTY,            :
                 Plaintiff,    :       Civil Action No. 10-4815 (FLW)
                                    :

        v.                         :
                                    :       **OPINION**

MICHAEL J. ASTRUE,         :
COMMISSIONER OF SOCIAL   :
SECURITY,                    :
                                    :

            Defendant.   :
_____ :

**WOLFSON, United States District Judge:**

Judith Moriarty ("Plaintiff") appeals the final decision of the Commissioner of Social Security ("Commissioner"). The Commissioner denied Plaintiff disability benefits under the Social Security Act ("Act"). The Court has jurisdiction to hear this matter pursuant to 42 U.S.C. § 405(g). Plaintiff contends that the record, when considered in full, substantiates her claims and requires a conclusion that she is entitled to disability benefits under the Act, or in the alternative, her case should be remanded for another hearing due to errors made by the Administrative Law Judge ("ALJ") and the Appeals Council. Specifically, Plaintiff maintains that: (1) the Appeals Council decision failed to provide a specific legal basis or explanation for its affirmation of the ALJ's decision denying Plaintiff's application for disability benefits; (2) the ALJ improperly afforded more weight to the reports of the evaluating physicians of Plaintiff's former employer than the reports of Plaintiff's own evaluating physicians; (3) the ALJ improperly afforded "negative weight" to the opinion of one of Plaintiff's evaluating physician, Dr. Tobe; and (4) the

1

ALJ erred by not obtaining the necessary testimony of a vocational expert. After reviewing the administrative record in full, I find that the ALJ's decision is based on substantial evidentiary support required by 42 U.S.C. § 405(g) and, therefore, the ALJ's decision is affirmed in its entirety.

## I.  BACKGROUND

### A.  Procedural History

Plaintiff first filed an application for Disability Insurance Benefits on February 15, 2008, claiming her disability began on March 23, 2006, when she injured her neck and right shoulder. Administrative Record ("AR") 114.  The Social Security Administration denied her initial application and her application for reconsideration.  AR 64-68, 72-74.  Plaintiff requested a hearing, which was held before ALJ Robert Gonzalez on February 19, 2010.  AR 24, 76.  On April 13, 2010, the ALJ issued a decision denying Plaintiff benefits, finding that she was not disabled.  AR 8-23.  Then on July 17, 2010, Plaintiff filed a Request for Review with the Social Security Appeals Council ("Appeals Council").  The Appeals Council denied Plaintiff's request. AR 1-3.  Plaintiff now files the instant matter, seeking further review of the ALJ's decision.

### B.  Background

Plaintiff was 45 years old at the onset date of the alleged disability.  AR 114.  Plaintiff has a high school education and is able to communicate in English.  AR 42, 136. Plaintiff worked as a courier with FedEx from 1996-2007; before that, she worked as a grocery store cashier and briefly as a bank teller.  AR 138.  She claims she is completely disabled by neck and shoulder pain, which is exacerbated by a heart condition, and is unable to find gainful employment.  AR 137.  In particular, she has (1) "difficulty walking and standing for long periods of time"; (2) "difficulty sleeping due to pain in [her] neck"; and (3) "difficulty lifting

carrying, pushing and pulling due to pain, pressure, and strain in [her] neck and shoulders." AR

137.  Plaintiff also suffers from coronary artery disease, for which she has had three heart stents

inserted in 2003.  AR 575.  In her request for reconsideration, Plaintiff also asked the

Commissioner to consider her depression and anxiety as impairments as well.  AR 72.

### C.  Review of Medical Evidence

On March 23, 2006, Plaintiff suffered pain in her right shoulder and neck when she was

lifting plastic buckets filled with letters.  AR 31-32.  The pain became excruciating and she

sought medical treatment.  Id.  Plaintiff claims the severity of her injury was the product of

numerous other injuries dating back to 1999.  Plaintiff was seen by Meridian Occupational

Health and diagnosed with a cervical sprain and right trapezius trigger point for an incident on

September 10, 1999, in which she felt pain in her neck and shoulder after shutting a van door.

AR 269, 273.  Plaintiff was prescribed anti-inflammatory medications and physical therapy.  AR

269.  Again, on March 14, 2002, Plaintiff had recurring trapezius pain from repetitive pulling of

a van door and attended six additional physical therapy sessions.  AR 270.  Plaintiff sustained

another cervical sprain, along with right wrist and elbow sprains, resulting from a fall on her

right arm on December 23, 2004.  AR 270.  Again, Plaintiff received physical therapy treatments,

along with pain medication, and a wrist splint. AR 270.  In 2003, Plaintiff underwent cardiac

surgery and had three stents placed in her heart.  AR 205.  She was able to recover from the

surgery without any functional limitations and continued to work at FedEx.  AR 55, 209, 237-

238.

After her injury on March 23, 2006, Plaintiff went to the CentraState Medical Center

Emergency Room, where she was treated and released.  AR  270.  At that time she came under

the care of Dr. Joshua M. Zimmerman, M.D., who, on April 12, 2006, after reviewing an MRI,

diagnosed Plaintiff with "degenerative disc disease at C6-7" and "C5-6 sections of her neck."

AR 257, 270.  Dr. Zimmerman referred Plaintiff to Dr. Francisco Del Valle, M.D., who evaluated

Plaintiff in July 2006 and diagnosed Plaintiff with Right C7 Radiculopathy.  AR 249.  Dr. Del

Valle proscribed "a series of cervical epidural steroidal injections at the C6-7 level for curative

intent." AR 249.  Plaintiff received these injections on August 16, 2006, August 30, 2006 and

September 12, 2006.  AR 270.  After the third injection, Plaintiff reported an improvement of

60% resolution of her original pain.  AR 246.  But as her neck and shoulder pain persisted,

Plaintiff was later examined by Dr. Cary D. Glastein, M.D.  AR 258-267.  After diagnosing

Plaintiff with a herniated disc at C5-C6, Dr. Glastein informed Plaintiff she was a candidate for

an anterior cervical decompression and fusion at C5-C6, a surgical procedure.  AR 260-262.  On

October 23, 2007, Plaintiff underwent this cervical fusion surgery at Monmouth Medical Center.

AR 259, 271.  Follow up visits with Dr. Glastein revealed that the decompression and spinal

fusion surgery was successful, but that Plaintiff still complained of some pain in the neck but no

pain in the arms.  AR 259.  Dr. Mark Sisskin performed a consultative examination in July 2008,

and after conducting tests, found that her neck had a "decreased range of motion" but that her

grip strength was 5/5 and her musculoskeltal strength was 5/5.  AR 305.  Dr. Sisskin also found

that Plaintiff's "cervical range of motion is intact...she is able to perform gross and fine

movements with all of her body parts except her neck." AR 305.  Plaintiff also attended physical

therapy sessions and began seeing a chiropractor, Dr. Sandra Bon-Beam, D.C., where she was

treated with "electrical muscle stimulation, cryotherapy, adjustments to the thoracic, lumbar and

sacroiliac spines" and she was also given "lumbar traction." AR 259, 271.

As a part of her worker's compensation claims, Plaintiff was referred for a neurological

examination by Jeffrey C. Pollock, M.D., on August 26, 2008, at the request of her former

employer, FedEx.  AR 846.  Dr. Pollock determined through a cervical MRI scan that no

fractures, dislocation, or herniation of any discs were present.  AR 849.  Dr. Pollack also

determined that Plaintiff's "permanent neurological disability is 0% and the permanent

neuropsychiatric disability is 0%" and that Plaintiff's degenerative cervical disease "has nothing

to do with her work related activities."  AR 849.  On December 4, 2008, Plaintiff was examined

by an orthopedist, Dr. Irving D. Strouse, M.D., again at the request of FedEx, who determined

that Plaintiff was "capable of performing light work with a lifting maximum of 20 pounds and a

carrying maximum of 10 pounds" and also that Plaintiff had "a permanent disability of 25% . . .

20% due to a pre-existing problem of degenerative disc disease and 5% due to the injury of

March 23, 2006."  AR 854.

On July 28, 2008, Plaintiff was also examined by an orthopaedist, Dr. Martin Riss, O.D.,

at the request of her counsel, regarding her worker's compensation claim.  AR 269.  Dr. Riss

determined that Plaintiff was "disabled orthopedically to the extent of 100% of the total" and that

Plaintiff "is totally disabled" with "[n]o fundamental or marked improvement [that] can be

reasonably expected and the prognosis for improvement is not favorable."  AR 275.  Dr. Riss

further determined that Plaintiff's status as being permanently disabled was created as a result of

Plaintiff's injuries of March 23, 2006.  AR 275.  On September 12, 2008, Dr. Edward H. Tobe,

D.O., D.F.A.P.A., evaluated Plaintiff's neurological and psychological state also at the request of

her counsel in connection with her worker's compensation claim.  AR 329.  Dr. Tobe determined

that "[a]s a direct result of [Plaintiff's] work injury there is a cervical radiculopathy causing a 25

percent permanent of total neurological disability."  AR 330.  Dr. Tobe also determined that "[a]s

a direct result of this work injury there is a mixed anxiety and depression causing a 25 percent

permanent of total psychiatric disability." AR 330.

### D. Testimonial Record

Plaintiff appeared at hearing, via video conference, before ALJ Gonzalez on February 19, 2010. AR 26. Plaintiff testified that she had worked full-time, 40 hours a week, as a courier for FedEx for almost ten years, performing such tasks as loading and driving her truck, delivering packages, and carrying boxes. AR 29-30. Plaintiff testified that on the morning of March 23, 2006, like every morning, she carried buckets containing letters and weighing 30 to 40 pounds for approximately an hour and a half before she began pulling packages off a conveyer belt and loading them into her truck. AR 32. At that time, Plaintiff testified she began to feel pain in her shoulder areas and feared that it was related to her pre-existing heart condition. AR 32. She went home for a few hours and then went to the emergency room where she learned that the pain was not heart related. AR 32. Plaintiff testified she was then referred to an orthopedic doctor, who informed her of degenerative discs in her neck. AR 32. Plaintiff also testified that epidurals administered by her pain management doctor gave her no relief until the third one, which gave her "some relief." AR 33-34.

Plaintiff stated that initially she was not willing to consider surgery. AR 33. After seeing a chiropractor for over a year, Plaintiff testified that the chiropractor explained she could not fix the problem, but only "keep it under control." AR 34. Plaintiff testified that she was then referred to an orthopedic doctor, Dr. Glastein, who told her she could either live with the problem or undergo surgery to correct it. AR 34. Plaintiff underwent surgery in October of 2007, and afterwards, she testified that she suffered from headaches, which she gets three to four times a week, sleepless nights, and discomfort on her right side. AR 34-35. Plaintiff further testified that she could not perform housework and that sitting was very uncomfortable. AR 35. Plaintiff also testified that there was a lot of weakness in her right side, vacuuming irritates her

shoulder, and that she is forced to take brief breaks when she walks on the beach because of a

tingling feeling in her right arm.  AR 37-39.  Plaintiff testified that she could not walk "even 10

minutes" without experiencing this tingling feeling.  AR 38.  Plaintiff testified that she takes

Tylenol to ease her headaches, but that she has not seen a neurologist about the headaches.  AR

39-40.  Plaintiff also stated that she would not be able to either return to her job as a courier, or

perform any job where she had to stand, walk, or even sit during the day.  AR 42.

### E.  The ALJ's Findings

The ALJ found that the Plaintiff met the insured status requirements of the Act through

June 30, 2012. AR 13.  Then the ALJ applied the standard five-step process of determining

whether Plaintiff met her burden of establishing her disability.  AR 13.  At Step One, the ALJ

found that Plaintiff had not engaged in substantial gainful activity since March 23, 2006.  AR 13.

At Step Two, the ALJ determined that Plaintiff had the following severe impairments: C5-6

herniated disc and status post cervical decompression of C5-6 and anterior fusion of C5-6.  AR

13.  The ALJ did not find, however, that Plaintiff's claims of coronary artery disease, depression,

and anxiety rose to the level of severe impairments.  AR 13.  The ALJ based his finding

regarding Plaintiff's coronary artery disease on the fact that after Plaintiff's cardiac surgery in

2003, Dr. Gutkowski, her treating physician, reported that Plaintiff had "no functional limitations

following surgery."  AR 13.  Also, Plaintiff actively worked from 2003 until March 2006 with

her heart condition.  AR 13.  And Plaintiff confirmed at the hearing that she had few continuing

issues with her heart condition.  AR 55.  Next, the ALJ addressed Dr. Tobe's finding that "[a]s a

direct result of this work injury there is a mixed anxiety and depression causing a 25 percent

permanent of total psychiatric disability."  AR 13 (quoting AR 330).  The ALJ did not find that

this, by itself, was a severe impairment and also found it "noteworthy to point out that Dr. Tobe

evaluated and interviewed the claimant on a neurological and psychiatric basis on only 1

occasion and that the claimant is not seeking mental health treatment."  AR 13-14.

At Step Three, the ALJ found that Plaintiff did not have an impairment or combination of

impairments that, under the Act, would automatically qualify Plaintiff as disabled.  AR 14.  The

ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform the full

range of light work defined by the Act.  AR 14.  In doing so, the ALJ followed a two-step process

to first determine whether there was any medically determinable physical or mental impairment

that could reasonably be expected to cause the Plaintiff's symptoms, and second, if these

symptoms have been shown, whether the credibility of the "intensity, persistence, and limiting

effects" of Plaintiff's symptoms was substantiated by objective medical evidence.  AR 14.  First,

the ALJ determined Plaintiff's severe impairments were not "more than minimal limitations on

the claimant's ability to perform basic work-related activities."  AR 13.  Second, the ALJ

determined that Plaintiff's claims of her "inability to work on a continued, sustained basis as a

result of her functional limitations" were not credible.  AR 14.

Regarding Plaintiff's claim of degenerative discs in her neck, the ALJ reviewed the

Plaintiff's testimony and subjective description of her symptoms.  The ALJ did not find

Plaintiff's allegations of her inability to work credible, and noted that Plaintiff testified that (1)

she was able to work until March 2006, despite her alleged cardiac history; (2) she is able to take

long walks even though she has to take short breaks; and (3) she is able to vacuum and go to the

movies periodically.  The ALJ also reviewed the "objective medical evidence"and found that,

based on such evidence, Plaintiff could perform a full range of light work despite her subjective

complaints to the contrary.  AR 14-15.  The ALJ cited to Dr. Sisskin's evaluation and finding

that Plaintiff could "perform gross and fine movements with all of her body parts except her

neck." AR 15 (citing AR 304-306).  The ALJ also discussed Dr. Glastein's findings that

Plaintiff's surgery was successful, Plaintiff only complained of intermittent neck pain afterwards,

and that by March 2008, Plaintiff's range of neck motion had improved and she had no

neurological defects.  The ALJ afforded these findings "great weight" because Dr. Glastein was

Plaintiff's treating physician for and after her spinal fusion surgery.  AR 16.

The ALJ also considered the evaluations from doctors requested by both Plaintiff's

former employer and Plaintiff.  The ALJ gave "some weight" to Dr. Pollock, who concluded that

Plaintiff required no permanent work restrictions from a neurological and neuropsychiatric

perspective, because Dr. Pollack's examination was "thorough and took into consideration

subjective complaints and objective clinical finding."  AR 16.  The ALJ also gave "some weight"

to Dr. Strouse, who found that Plaintiff was capable of performing light work, lifting a maximum

of 20 pounds, carrying a maximum of 10 pounds, and had a permanent disability of 25%,

because Dr. Strouse's relied on "objective findings and subjective complaints" to arrive at his

assessment.  AR 16.

The ALJ also examined the medical findings of Dr. Riss and found that he could not

afford "great weight" to the conclusions of Dr. Riss because "Dr. Riss examined the [Plaintiff]

for workers' compensation purposes, and not for the purpose of providing the [Plaintiff]

treatment" and "because Dr. Riss's reports relies heavily on [Plaintiff's] subjective complaints"

when finding that Plaintiff was totally disabled.  AR 16.  These findings led the ALJ to determine

that Plaintiff's alleged symptoms were inconsistent with objective medical evidence regarding

Plaintiff's residual function capacity.  AR 17.

At Step Four, the ALJ determined that Plaintiff was unable to perform her past relevant

work as a "light truck driver."  AR 17.  At Step Five, the ALJ determined that Plaintiff was 45

years old, a "younger individual" for disability benefits purposes, had a high school diploma, spoke English, and that transferability of job skills was not material because the Medical-Vocational Rules directly supported a finding of "not disabled." AR 17.  Considering the Plaintiff's age, education, work experience, and residual function capacity, the ALJ found that "there are jobs that exist in significant numbers in the national economy that the [Plaintiff] can perform." AR 17.  Specifically, the ALJ determined that Medical-Vocational Rule 202.21 directly supported a finding of "not disabled." AR 17-18.

## II. DISCUSSION

### A. Standard of Review

On a review of a final decision of the Commissioner of the Social Security Administration, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); see Matthews v. Apfel, 239 F.3d 589, 592 (3d Cir. 2001).  The Commissioner's decisions regarding questions of fact are deemed conclusive on a reviewing court if supported by "substantial evidence in the record." 42 U.S.C. § 405(g); see Knepp v. Apfel, 204 F.3d 78, 83 (3d Cir. 2000). While the court must examine the record in its entirety for purposes of determining whether the Commissioner's findings are supported by substantial evidence, Gober v. Matthews, 574 F.2d 772, 776 (3d Cir.1978), the standard is highly deferential. Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004).  Indeed, "substantial evidence" is defined as "more than a mere scintilla," but less than a preponderance. McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir. 2004).  "It means such relevant evidence as a reasonable mind might accept as adequate." Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999).  A reviewing court is not "empowered to weigh the

evidence or substitute its conclusions for those of the fact-finder." Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992). Accordingly, even if there is contrary evidence in the record that would justify the opposite conclusion, the Commissioner's decision will be upheld if it is supported by the evidence. See Simmonds v. Heckler, 807 F.2d 54, 58 (3d Cir. 1986).

### B.  Standard for Entitlement of Benefits

Disability insurance benefits may not be paid under the Act unless Plaintiff first meets the statutory insured status requirements. See 42 U.S.C. § 423(c). Plaintiff must also demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); see Plummer, 186 F.3d at 427. An individual is not disabled unless "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). Eligibility for supplemental security income requires the same showing of disability. 42 U.S.C. § 1382c(a)(3)(A); 42 U.S.C. § 1382c(a)(3)(B).

The Act establishes a five-step sequential process for evaluation by the ALJ to determine whether an individual is disabled. See 20 C.F.R. § 404.1520. First, the ALJ determines whether the claimant has shown that she is not currently engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a); see Bowen v. Yuckert, 482 U.S. 137, 146-47 n. 5 (1987). If a claimant is presently engaged in any form of substantial gainful activity, she is automatically denied disability benefits. See 20 C.F.R. § 404.1520(b); see also Bowen, 482 U.S. at 140. Second, the ALJ determines whether the claimant has demonstrated a "severe impairment" or "combination

of impairments" that significantly limits his physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520©; see Bowen, 482 U.S. at 146-7 n. 5.  Basic work activities are defined as "the abilities and aptitudes necessary to do most jobs."  20 C.F.R. § 404.1521(b).  These activities include physical functions such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling."  Id.  A claimant who does not have a severe impairment is not considered disabled.  20 C.F.R. § 404.1520©; see Plummer, 186 F.3d at 428.  Third, if the impairment is found to be severe, the ALJ then determines whether the impairment meets or is equal to the impairments listed in 20 C.F.R. Pt. 404, Subpt. P ., App. 1 (the "Impairment List"). 20 C.F.R. § 404.1520(a)(4) (iii).   If the claimant demonstrates that her impairments are equal in severity to, or meet those on the Impairment List, the claimant has satisfied her burden of proof and is automatically entitled to benefits.  See 20 C.F.R. § 404.1520(d); see also Bowen, 482 U.S. at 146-47 n. 5.  If the specific impairment is not listed, the ALJ will consider the impairment that most closely satisfies those listed for purposes of deciding whether the impairment is medically equivalent.  See 20 C.F.R. § 404.1526(a).  If there are multiple impairments, then the ALJ must consider whether the combination of impairments is equal to any listed impairment.   Id.  An impairment or combination of impairments is basically equivalent to a listed impairment if there are medical findings equal in severity to all the criteria for the one most similar.  Williams, 970 F.2d at 1186.

If the claimant is not conclusively disabled under the criteria set forth in the Impairment List, step three is not satisfied, and the claimant must prove at step four that she does not retain the residual functional capacity to perform her past relevant work.  20 C.F.R. § 404.1520(e); Bowen, 482 U.S. at 141.  If the claimant is able to perform her previous work, the claimant is determined to not be disabled.  20 C.F.R. § § 404.1520(e), 416.920(e); Bowen, 482 U.S. at 141-

42.  The claimant bears the burden of demonstrating an inability to return to the past relevant

work.  Plummer, 186 F.3d at 428.  Finally, if it is determined that the claimant is no longer able

to perform her previous work, the burden of production then shifts to the Commissioner to show,

at step five, that the "claimant is able to perform work available in the national economy."

Bowen, 482 U.S. at 146-47 n. 5; Plummer, 186 F.3d at 428.  This step requires the ALJ to

consider the claimant's residual functional capacity, age, education, and past work experience. 20

C.F.R. § 404.1520(f).  The ALJ must analyze the cumulative effect of all the claimant's

impairments in determining whether the claimant is capable of performing work and not

disabled.  Id.

### C.  Plaintiff's Claims on Appeal

#### 1.  Appeals Council's Decision

Plaintiff contends that it was error for the Appeals Council to deny review without

providing a legal basis or explanation for its decision.  Plaintiff's entire argument is limited to

one paragraph and appears to be more directed to her argument that the ALJ's decision was not

supported by substantial evidence rather than as a separate ground for reversal.  No matter the

point of Plaintiff's argument, I have no authority to review a denial by the Appeals Council.  The

Supreme Court has explained that when the Appeals Council denies review, it is the decision of

the ALJ that becomes final and thus reviewable.  Sims v. Apfel, 530 U.S. 103, 106-107 (2000);

Matthews v. Apfel, 239 F.3d 589, 594 (3d Cir. 2001) ("No statutory authority (the source of the

district court's review) authorizes the court to review the Appeals Council decision to deny

review."). Therefore, the ALJ's decision is the one properly before me today and the one I must review.[1]

## 2. ALJ's Weighing of Physicians' Conclusions

Plaintiff argues it was error for the ALJ to afford more weight to the evaluating physicians of Plaintiff's employer, Dr. Pollack and Dr. Strouse, than to those provided by Plaintiff herself, Dr. Riss and Dr. Tobe. It appears Plaintiff's ultimate objective is to show the ALJ's finding is not supported by substantial evidence. In making a RFC determination, an ALJ must discuss both the evidence that supports his conclusion and the evidence that was rejected. Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 121 (3d Cir. 2000); Cotter v. Harris, 642 F.2d 700, 705-07 (3d Cir. 1981).

At the outset, I note that in focusing solely on these four doctors, Plaintiff is ignoring the record as a whole. The ALJ's conclusion was that Plaintiff suffered severe impairments due to her neck injury, but that she could still perform a full range of light work. As discussed above, the ALJ considered the evidence before him, including both the objective medical evidence and Plaintiff's own account of her limitations. The ALJ relied most on Plaintiff's treating physicians – none of whom are discussed in Plaintiff's brief. For example, the ALJ cited to the report of Dr. Del Valle, who administered Plaintiff's epidural treatments prior to her surgery. Plaintiff

---

[1]Even if I had authority to review the Appeals Council's denial, I find no error with it. The Appeals Council explained that it "applied the laws, regulations, and rulings in effect as of the date we took this action" and that it would review Plaintiff's if the ALJ abused his discretion, there was an error of law, there was the absence of substantial evidence, a broad policy or procedural issue affecting the public interest, or it received new and material evidence. AR 1. Plaintiff's sole reason underlying her Request for Review was: "I am totally and completely disabled and unable to hold gainful employment." AR 7. Plaintiff never submitted new or additional evidence in connection with her request. Plaintiff's grounds for her request simply restated why she was seeking benefits in the first place and provided no reason to prompt a review.

reported to Dr. Del Valle that her epidural treatments resulted in an estimated "60% resolution of her original pain." AR 246. Dr. Del Valle found that Plaintiff's "condition of cervical radiculopathy has resolved after a series of cervical epidural injections. She does have significant residual cervical segmental dysfunction with myofascial pain and stiffness." Id. And the ALJ relied on the findings of Dr. Sisskin, who found that Plaintiff had good strength and range of motion except for her neck, which was limited. AR 15 (citing to AR 305). Perhaps most important to his analysis, the ALJ afforded the findings of Dr. Glastein "great weight." Dr. Glastein was Plaintiff's treating orthopedist who performed Plaintiff's surgery and provided follow-up treatment and reported that Plaintiff was doing well after surgery. Specifically, Dr. Glastein found (1) in December 2007, x-rays showed "excellent placement of instrumentation and graft"; (2) in January 2008, Plaintiff was experiencing "intermittent symptoms" of pain in her neck but the "wound was well-healed" and engaging in range of motion and strengthening exercises; and (3) in March 2008, while Plaintiff continued to have "some pain" she was neurologically intact, the wound continued to be well healed, her range of motion had improved, and she showed good placement of her instrumentation and graft with solid fusion. AR 259-262.

Instead of addressing this evidence, Plaintiff argues that the ALJ must give equal weight to the evaluating physician reports. Whenever medical evidence is presented at a disability hearing, it is "always consider[ed] . . . together with the rest of the relevant evidence" received. 20 C.F.R. § 404.1527. If the medical evidence that is presented is inconsistent with other evidence, all of the evidence will be apportioned weight to determine disability status. Id. The factors used to determine the appropriate weight of medical evidence include examining and treatment relationship, supportability, consistency and specialization of the physician. Id. The

15

ALJ is responsible for making these determinations and is required to give reasons for the weight that was apportioned to the evidence. Id.

Here, the ALJ considered these factors and provided reasons why he afforded some weight to findings of Dr. Pollack and Dr. Strouse and found Dr. Riss's report "cannot be afforded great weight." AR 14-17.   The ALJ also incorporated Dr. Tobe's conclusions into his decision, another of Plaintiff's evaluating physicians.  AR 13-14.  Dr. Tobe's and Dr. Strouse's conclusions generally comported with those of Plaintiff's treating physicians.  Both found that Plaintiff suffered some level of disability: Dr. Strouse estimated it at 25% of total disability and Dr. Tobe at 25% of total neurological disability and 25% of total psychiatric disability.  On the other hand,  Dr. Pollack concluded that Plaintiff had no disability whatsoever and Dr. Riss concluded that Plaintiff was completely disabled.  Both conclusions conflict with those of Plaintiff's treating physicians (and the other medical evidence), and the ALJ adopted neither one. No other doctors in the record made an estimate of Plaintiff's disability that comports with Dr. Riss's findings.

The ALJ apportioned weight to all medical evidence and incorporated it into his decision. The ALJ's conclusion that Plaintiff suffered impairment, but could perform light work is supported by substantial evidence from Plaintiff's treating physicians, evaluating physicians, and other evidence.  It was therefore not improper for the ALJ to apportion less weight to medical evidence that conflicted with this finding.

### 3.  Negative Weight to Dr. Tobe's Opinion

Plaintiff next contends that the ALJ erred by affording negative weight to the opinion of Dr. Tobe without contrary medical evidence.  The Court disagrees.  First, the ALJ never stated that he was giving Dr. Tobe's opinion "negative weight."  Indeed, as discussed above, Dr. Tobe's

assessment supports the ALJ's finding that Plaintiff suffered from impairment, but was not completely disabled.  AR 330.

Plaintiff further argues that because no evidence refuted Dr. Tobe's finding of Plaintiff's mental state, it was error to ignore the Plaintiff's psychiatric disability.  But the ALJ did not ignore Plaintiff's disability, instead he found it did not rise to the level of a severe impairment. AR 13.  Dr. Tobe found that Plaintiff suffered from "mixed anxiety and depression," which caused a 25% permanent psychiatric disability.  AR 13.  This by itself does not necessarily suggest a severe impairment.  Further, Plaintiff saw Dr. Tobe only once and she was not seeking mental health treatment then or now.  Finally, the ALJ's analysis specifically incorporated both Plaintiff's physical and mental conditions: "Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce claimant's pains or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functioning." AR 14.  I am not persuaded by Plaintiff's argument and find that the ALJ neither improperly weighed the opinion of Dr. Tobe nor that Dr. Tobe's opinion requires any different finding by the ALJ.  The ALJ's finding that Plaintiff's psychiatric condition did not constitute a severe impairment is supported by substantial evidence.

### 4. Vocational Expert Testimony

Finally, the Plaintiff asserts that the ALJ should have required vocational expert testimony in determining what jobs Plaintiff could potentially hold in the national economy. Specifically, Plaintiff contends that the ALJ acted arbitrarily and capriciously in denying Plaintiff's application for disability by improperly taking administrative notice of the jobs

Plaintiff could perform without testimony by a vocational expert.  Plaintiff does not explain why it was arbitrary or capricious of the ALJ to use the Medical-Vocational Guidelines.

Before 1978, the Social Security Administration had to rely on the testimony of vocational experts to determine if a claimant was capable of performing a job found in the national economy.  Heckler v. Campbell, 461 U.S. 458, 461 (1983).  After the 1978 reform, medical-vocational guidelines were created to help produce consistent results in determining what jobs a claimant could perform.  Id. (citing 20 C.F.R. pt. 404, subpt. P, app. 2); see also Sykes v. Apfel, 228 F. 3d 259, 268-69 (3d Cir. 2000).  These guidelines list four factors – physical ability, age, education, and work experience – and "set forth rules that identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy."  Campbell, 461 U.S. at 462.  Where a claimant possesses the required qualifications for jobs in the national economy and suffers only exertional limitations "the guidelines direct a conclusion as to whether work exists that the claimant could perform. If such work exists, the claimant is not considered disabled."  Id.  Here, after considering Plaintiff's age, education, work experience and her residual functional capacity, the ALJ concluded that jobs exist in significant numbers in the national economy that the Plaintiff could perform pursuant to the Medical-Vocational Guidelines and specifically by Medical-Vocational Rule 202.21.

Plaintiff never argues that the ALJ should have found she suffered from nonexertional limitations and that is why it was inappropriate to rely exclusively on the Medical-Vocational Guidelines.  But even if Plaintiff had made that argument, it would be unavailing because, as I discussed above, the ALJ's determinations of Plaintiff's severe impairments were supported by substantial evidence.  Therefore, I do not find that the ALJ's reliance on the Medical-Vocational Guidelines was arbitrary and capricious.

**III.  CONCLUSION**

For the reasons set forth above, the Court concludes that there is substantial evidence in the record to support the ALJ's determination that Plaintiff was not disabled.  Therefore, the ALJ's decision is affirmed in its entirety.


Dated: March 30, 2012                                    /s/    Freda L. Wolfson
                                                         Honorable Freda L. Wolfson
                                                         United States District Judge